**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUAN RAMIREZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VGC GROUP LP,

Defendant.

Case No. 3:24-cv-02221-CAB-DDL

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Hearing Date: August 15, 2025

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE AND FEDERAL WIRETAPPING CLAIMS ..... 3

II. PLAINTIFF STATES A CLAIM UNDER THE ECPA ..... 8

III. PLAINTIFF STATES A CLAIM UNDER CIPA ..... 13

A. Plaintiff Sufficiently Alleges That Meta Violated the Second Prong of Section 631(a) ..... 13

B. Plaintiff Did Not Consent to the Disclosure of His Protected Health Information ..... 15

IV. PLAINTIFF CAN SEEK INJUNCTIVE RELIEF FOR HIS INVASION OF PRIVACY CLAIM UNDER THE CALIFORNIA CONSTITUTION ..... 17

CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 5, 9

*Barcliff v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) .......... 7

*Batts v. Gannett Co.*,
2023 WL 3143695 (E.D. Mich. Mar. 30, 2023) .......... 6

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) .......... 3

*Bras v. Cal. Pub. Util.'s Comm'n*,
59 F.3d 869 (9th Cir. 1995) .......... 18

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. Aug. 7, 2023) .......... 5, 7

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 16

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 4, 7, 11

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) .......... 4

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F.Supp.3d 369 (S.D.N.Y. July 30, 2024) .......... 9, 10

*Cousin v. Sharp Healthcare*,
702 F.Supp.3d 967 (S.D. Cal. Nov. 17, 2023) .......... 2, 17

*D'Angelo v. FCA US, LLC*,
726 F.Supp.3d 1179 (S.D. Cal. Mar. 28, 2024) ..... 17

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ..... 14

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..... 15

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) ..... 13, 15

*Doe v. Tenet Healthcare Corporation*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) ..... 5

*Feldman v. Star Tribune Media Company LLC*,
2023 WL 2388381 (D. Minn. Mar. 7, 2023) ..... 5

*Frasco v. Flo Health, Inc*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) ..... 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*,
528 U.S. 167 (2000) ..... 4

*Gaige v. Exer Holding Company, LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ..... 2, 5

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) ..... 6

*Garcia v. Enterprise Holdings, Inc.*,
78 F.Supp.3d 1125 (N.D. Cal. 2015) ..... 16

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ..... 10

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ..... 3

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. July 27, 2023) ..... 5

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ..... 15

*Helgund v. Atkin Cnty.*,
871 F.3d 572 (8th Cir. 2017)....5

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....5

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....11

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....15

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)....15

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)....5

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....9

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. Dec. 22, 2022)....2, 9, 16

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. Mar. 25, 2024)....13, 14

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016)....6

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014)....12

*Jones v. Peloton Interactive, Inc.*,
720 F.Supp.3d 940 (S.D. Cal. Mar. 12, 2024)....18

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....2, 10

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)....9, 10

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....9

*Lighttoller v. Jetblue Airways Corporation*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 7

*Lin v. Crain Communications, Inc.*,
2020 WL 248445 (E.D. Mich. Jan. 16, 2020) .......... 6

*Lonegan v. Hasty*,
436 F.Supp.2d 419 (E.D.N.Y.2006) .......... 12

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) .......... 2

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) .......... 17

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 9

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) .......... 7

*People v. Superior Court of Los Angeles County*,
70 Cal.2d 123 (1969) .......... 14

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 5

*Petris v. Sportsman's Warehouse, Inc.*,
736 F.Supp.3d 260 (W.D. Pa. June 3, 2024) .......... 4, 7, 8

*Phillips v. U.S. Customers and Border Protection*,
74 F.4th 986 (9th Cir. 2023) .......... 7

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) .......... 8, 9, 11, 13

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 10, 13

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 14

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 7

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 3

*Salazar v. National Basketball Association*,
2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) .......... 6

*Shields v. Pro. Bureau of Collections of Md., Inc.*,
55 F.4th 823 (10th Cir. 2022) .......... 7

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 16

*Smith v. Facebook, Inc.,*
745 F. App'x 8 (9th Cir. 2018) .......... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......... 9

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4, 5

*United States v. Christiansen*,
828 F.3d 763 (9th Cir. 2015) .......... 13

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .......... 14

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .......... 5

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir.2003) .......... 3

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp 3d. 1073 (C.D. Cal. 2021) .......... 14

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 11

**STATUTES**

18 U.S.C. § 2511(2)(d) .......... 8

18 U.S.C. § 2520 (2005) .......... 12

18 U.S.C. § 2710(b)(1) .......... 6

42 U.S.C. § 1320d-6 .......... 10, 11

42 U.S.C. § 1320d-6(a)(3) .......... 10

**RULES**

Fed. R. Civ. P. 8(a)(2) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 3, 7

**REGULATIONS**

45 C.F.R. § 160.103 .......... 4

45 C.F.R. § 164.502 .......... 4

## INTRODUCTION

Defendant VGC Group LP ("Defendant") operates a chain of surgery centers across North America that specialize exclusively in Laser-Assisted In Situ Keratomileusis ("LASIK") procedures, operating under the LasikMD brand. Defendant holds itself out as a trusted partner to those navigating health challenges related to vision impairment. *See* First Amended Complaint (ECF No. 13) ("FAC") ¶ 2. Through its website, us.lasikmd.com (the "Website"), Defendant invites individuals to learn about the causes of vision impairment and the treatment option it provides, namely, LASIK surgery. *Id.* But behind this seemingly compassionate digital front lies a troubling betrayal: while promoting a façade of care and confidentiality, Defendant secretly discloses sensitive and protected health information ("PHI"), including details of the LASIK surgery consultations booked by its patients, to Meta Platforms, Inc. ("Meta" or "Facebook"), one of the world's largest social media and advertising companies. And it does so without its patients' knowledge or consent.

This is not a disclosure made for medical treatment or care. It is a calculated exploitation of patient data for commercial gain, fueling targeted advertising and enriching both Defendant and Meta in the process, at the expense of Defendant's patients. The vehicle for this intrusion is the Facebook Tracking Pixel, a tracking tool embedded by Defendant on its own Website, which intercepts PHI as patients engage with the platform to book their surgical consultations. Plaintiff, like countless others, used the Website to seek medical care while maintaining a Facebook account. He had no reason to suspect that doing so would expose his private medical information to a third-party advertiser.

As a healthcare provider, Defendant is subject to strict duties under federal law, including the Health Insurance Portability and Accountability Act ("HIPAA"), which defines and protects individually identifiable health information ("IIHI").

This includes any data created or received by a healthcare provider that relates to a person's physical or mental health (including patient status) and identifies (or could reasonably be used to identify) that person. *See In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 791 (N.D. Cal. Dec. 22, 2022) ("I agree that the information at issue here appears to show patient status and thus constitutes protected health information under HIPAA."); *Cousin v. Sharp Healthcare*, 702 F.Supp.3d 967, 974 (S.D. Cal. Nov. 17, 2023). Importantly, HIPAA protections attach to PHI collected on a provider's website, even before a formal doctor-patient relationship is established. Defendant's conduct flies in the face of these obligations.

Courts in this Circuit routinely recognize that such conduct is unlawful. *See Gaige v. Exer Holding Company, LLC*, 2025 WL 559719, at *5 (C.D. Cal. Mar. 2, 2025) (denying motion to dismiss claims brought under the ECPA and CIPA where the plaintiff alleged that the defendant health care provider unlawfully disclosed PHI to Facebook without his knowledge or consent); ( *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (same). This case is no different.

Tellingly, Defendant largely relies on outdated and irrelevant case law that is wholly unrelated to the unlawful disclosure of medical information through advertising technologies like the Facebook Tracking Pixel. As such, and for reasons discussed more thoroughly below, the Court should deny Defendant's motion in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must

provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "If the challenge to jurisdiction is a facial attack ... the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *2 (S.D. Cal. Oct. 9, 2015) (internal citation and quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE AND FEDERAL WIRETAPPING CLAIMS

Defendant argues that Plaintiff lacks standing because "Plaintiff does not analogize to any common law tort or otherwise allege any basis for standing." MTD

at 6. This argument has been consistently rejected.

In order to establish Article III standing, a plaintiff must plead facts that plausibly demonstrate three things: (1) he has suffered a concrete, particularized, and actual (*i.e.*, not conjectural or hypothetical) injury; (2) the injury is traceable to the challenged action of the defendant; and (3) it is likely (*i.e.*, not merely speculative), that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000). The harm suffered by the plaintiff must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F.Supp.3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Ninth Circuit is in accord, acknowledging that, even before *TransUnion*, "[the harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another." *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1117-19 ( 9th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (internal citations omitted). Because those privacy harms are "well-ensconced in the fabric of American law," intangible harms bearing a close relationship to them "qualify as concrete." *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155–159 (3d Cir. 2022) (internal quotations omitted).

Healthcare providers, like Defendant, are prohibited from disclosing medical information. 45 C.F.R. §§ 160.103, 164.502. Patients who have had their protected

information disclosed without their consent have suffered a harm akin to intrusion upon seclusion. *See TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Gaige*, 2025 WL 559719, at *2 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted); *see also Feldman v. Star Tribune Media Company LLC*, 2023 WL 2388381, at *5 (D. Minn. Mar. 7, 2023) (noting the "evidently close relationship between Feldman's VPPA claim in this case and the intrusion-upon-seclusion tort as it has been traditionally understood"); *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("a concrete injury for Art. III standing purposes occurs when Google, or any other third party, tracks a person's Internet browser activity without authorization); *Helgund v. Atkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017) ("An individual's control of information concerning her person—the privacy interest [plaintiffs] claim here—was a cognizable interest at common law"); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) (ample precedent recognizes that an individual has an interest in preventing disclosure of their personal information). Several post-*TransUnion* decisions confirm this position. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022) ("In *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as concrete when that injury bears a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.") (internal quotations omitted); *see also Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1037 (S.D. Cal. July 27, 2023) (finding that "intrusions into privacy can constitute injury in fact"); *Brown v. Google LLC*, 685 F.Supp.3d 909, 925 (N.D. Cal. Aug. 7, 2023) (same); *Doe v. Tenet Healthcare*

*Corporation*, 2025 WL 1635956, at *11 (E.D. Cal. June 9, 2025) (same); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *4 (C.D. Cal. Feb. 1, 2024) (same); *Frasco v. Flo Health, Inc*, 2025 WL 1433825, at *11–12 (N.D. Cal. May 19, 2025) (same); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff responses that a CIPA violation is a violation of privacy rights and is a sufficiently concrete injury-in-fact. This Court agrees."). Courts from across the country have reached the same conclusion in similar contexts. For example, the Video Privacy Protection Act and Michigan's Preservation of Personal Privacy Act prohibit companies from disclosing information related to consumers' video viewing materials and subscriptions. *See* 18 U.S.C. § 2710(b)(1); Mich. Compl. Laws § 445.1712. Under both statutes, both before and after *TransUnion*, courts have uniformly held that unlawful disclosures constitute concrete injuries sufficient to confer Article III standing. *See*, *e.g.*, *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."); *Batts v. Gannett Co*., 2023 WL 3143695, at *3 (E.D. Mich. Mar. 30, 2023) ("[T]he Supreme Court's recent *TransUnion* case does not alter the settled matter of a PPPA violation satisfying Article III standing requirement for a concrete and particularized injury in fact."); *Salazar v. National Basketball Association*, 2023 WL 5016968, at *5 (S.D.N.Y. Aug. 7, 2023) (collecting cases); *Lin v. Crain Communications, Inc.*, 2020 WL 248445, at *6 (E.D. Mich. Jan. 16, 2020) (collecting cases).

Here, Plaintiff does not allege an injury stemming from a bare statutory violation. Instead, he alleges that, "in June 2024, [he] booked a consultation for LASIK surgery through Defendants' Website" and that "[u]nbeknownst to [him], Defendant[] assisted third parties with intercepting sensitive information pertaining to his LASIK surgery consultation. . . including those that contained individually identifiable health information." *See* FAC ¶¶ 6-7. Such disclosures were made for

the purposes of targeted advertising without Plaintiff's consent. *Id.* Plaintiff suffered a concrete injury from this disclosure, as it was an egregious violation of Plaintiff's privacy and Defendant's legal duties to protect such information from disclosure. FAC ¶ 113; *see Campbell*, 951 F.3d at 1117 (finding a legally cognizable privacy injury where plaintiffs alleged "Facebook identifies and collects the contents of users' individual private messages."). This harm suffered by Plaintiff is one traditionally recognized by American courts. *Brown*, 685 F.Supp.3d at 925; *Petris*, 736 F.Supp.3d at 270-71.

The authority relied upon by Defendant is inapposite, as those cases did not concern the unlawful disclosure of protected health information. *See Phillips v. U.S. Customers and Border Protection*, 74 F.4th 986, 993 (9th Cir. 2023) (finding no standing because the plaintiffs failed to identify "something beyond retention alone that resulted in an injury of the sort recognized by the Supreme Court, such as a material risk of future tangible harm, a violation of the common law right to privacy, or a cognizable constitutional violation."); *Lighttoller v. Jetblue Airways Corporation*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding no standing where the plaintiff failed to allege that she disclosed any personal information to the defendant); *Barcliff v. Keystone Credit Servs., LLC*, 93 F.4th 136, 146 (3d Cir. 2024) ("When the communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the consumer has not suffered the kind of privacy harm traditionally associated with public disclosure."); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731 (7th Cir. 2023) (same); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 829 (10th Cir. 2022) (same). The remaining authority relied upon by Defendant is similarly misplaced. *See, e.g., Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *6-8 (C.D. Cal. Feb. 27, 2025) (dismissing the plaintiff's intrusion upon seclusion claim under Rule 12(b)(6) and dismissing the plaintiff's CIPA claim due to constructive notice of the defendant's privacy policy). Defendant's argument

regarding "business-to-business disclosures" fares no better, as Defendant fails to cite *any* authority finding that an unlawful disclosure of HIPAA protected information fails to establish standing under Article III. There is none. Similarly, Plaintiff need not allege publicity in order to state a harm analogous to the harm of intrusion upon seclusion. *See Petris*, 736 F.Supp.3d at 270-71.

## II. PLAINTIFF STATES A CLAIM UNDER THE ECPA

Defendant argues that Plaintiff's claim under the Wiretap Act fails because Defendant was a party to the intercepted communication. MTD at 11. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

*R.C. v. Walgreen Co.* is instructive. There, the plaintiff alleged that the defendant health care provider installed certain advertising technology on its website. 733 F.Supp.3d 876, 901 (C.D. Cal. 2024). This advertising technology allowed the defendant to intercept the plaintiff's interactions with its website, including the "links, pages, and tabs users click and view," related to their medical queries in violation of consumers' privacy interests. *Id* at 902. The court determined the plaintiff's allegations were sufficient to trigger the crime-tort exception. *Id.* at 901.

Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. FAC

¶¶ 7, 91-93. Multiple federal courts, including those within the Ninth Circuit, have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Meta Pixel I*, 647 F.Supp.3d at 797 ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws"); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception).

Defendant attempts to circumvent this reality by arguing that "Plaintiff [cannot] allege that committing a HIPAA violation was the purpose of the alleged interception given that Plaintiff says outright that his Confidential information was allegedly monetized for advertising purposes." MTD at 12 (internal citations omitted). This argument has been consistently rejected by courts across the country. *See Walgreen Co.*, 733 F.Supp.3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law."); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive."); *Cooper v. Mount Sinai*

*Health Systems*, Inc., 742 F.Supp.3d 369, 381-82 (S.D.N.Y. July 30, 2024) (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain.").

Defendant also claims that "Plaintiff does not plausibly allege that LasikMD intended to violate HIPAA." MTD at 12. That is wrong. The Department of Health and Human Services broadly defines individually identifiable health information ("IIHI") as "any information … that … is created or received by a health care provider … relates to the provision of health care to an individual or the past … payment for the provision of health care to an individual, and…there is a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d-6. Healthcare companies, like Defendant, have received countless warnings regarding the use of internet advertising technology, like the Facebook Pixel. FAC ¶¶ 54-65. As recognized by courts across the country, including within this Circuit, it is unlawful to disclose a patient's IIHI for commercial purposes, as Plaintiff alleges Defendant has done here. 42 U.S.C. § 1320d-6(a)(3). At the pleading stage, this is sufficient to show that Defendant intended to violate HIPAA. *See R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) (finding that the plaintiff plausibly alleged that the defendant healthcare company intended to violate HIPAA when it disclosed protected health information to Facebook); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (same); *Cooper v. Mount Sinai Health Systems, Inc.,* 742 F. Supp. 3d 369, 381 (S.D.N.Y. July 30, 2024) ("Mount Sinai, for commercial ends, intentionally disclosed [IIHI], and thus violated HIPAA, *which makes it a crime for a health care provider to disclose [IIHI] for commercial gain*.") (emphasis added); *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (same); *Kane v.*

*University of Rochester*, 2024 WL 1178340, at *8 (W.D.N.Y. Mar. 19, 2024) (same). Plaintiff alleges "Defendant[] intentionally intercepted or intentionally assisted in the interception of the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy, among others." FAC ¶ 90. Plaintiff further alleges that "Plaintiff's information that Defendant[] assisted Facebook in intercepting qualifies as IIHI, and Defendant[] violated Plaintiff's and Class Members' expectations of privacy. Such conduct constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. § 1320d-6." *Id.* ¶ 92. Nothing more is required. *Walgreen Co.*, 733 F.Supp.3d at 902.

Again, Defendant fails to cite to any authority related to the unlawful disclosure of protected health information. *See Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *1 (S.D. Cal. Feb. 13, 2025) (allegations concerning mere browsing information); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at * 3 (N.D. Cal. Mar. 18, 2014) (allegations concerning Google's acquisition of email communications with Google account holders).

Finally, Defendant argues that Plaintiff's ECPA claim should be dismissed because "the statute does not provide for any form of secondary liability (e.g., aiding and abetting)." MTD at 13. Defendant misunderstands Plaintiff's allegations. Plaintiff alleges that "[u]sing the Facebook Tracking Pixel, Defendant[] shared patients' online activity, including their sensitive and confidential information related to appointments for LASIK procedures." FAC ¶ 31. Additionally, "[e]ach time Defendant[] sent this activity data, it also disclosed customers' personally identifiable information, including their Facebook ID." *Id.* ¶ 33. "By utilizing and embedding the Facebook Tracking Pixel on their Website, Defendant[] intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members." *Id.* ¶ 85. And

"Plaintiff and Class Members did not authorize Defendant[] to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy through the Facebook Tracking Pixel." *Id.* ¶ 9. Accordingly, Plaintiff does not bring his ECPA claim under an aiding and abetting theory. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("The statute prohibits an entity from intercepting, endeavoring to intercept or procuring another to intercept. We do not intend our definition of aider and abettor to cover a "procurer" as used in the statute. *See Lonegan v. Hasty*, 436 F.Supp.2d 419, 427–28 (E.D.N.Y.2006). ***A procurer is not an aider and abettor but one who violates the statute directly*.**") (emphasis added). The *Lonegan* court also rejected the narrow interpretation of the ECPA argued by Defendant.

> To me, the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations. In relevant part, the amended statute provides that "any person whose wire, oral, or electronic communication is intercepted ... in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation ..." 18 U.S.C. § 2520 (2005). Pursuant to Section 2511(1)(a), the class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, both the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engaged in that violation.

436 F.Supp.2d at 428. In any event, courts consistently find similar allegations sufficient to sustain a claim for violation of the ECPA. *See Id.* ("But even if Congress did eliminate the private right of action against those who procure the interception of protected communications, plaintiffs' Wiretap Act claims cannot be dismissed. As an alternative to their procurement theory of liability, plaintiffs assert

that Hasty intercepted their communications directly. Therefore, even if the procurement theory fails, the direct interception theory is sufficient to support the claims"); *Walgreen Co.*, 733 F. Supp. 3d at 902; *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025).

## III. PLAINTIFF STATES A CLAIM UNDER CIPA

### A. Plaintiff Sufficiently Alleges That Meta Violated the Second Prong of Section 631(a)[1]

Defendant argues that "Plaintiff does not plausibly allege that Meta intended to wiretap a conversation without his consent." MTD at 17. That is wrong.

As a preliminary matter, intent is a premature inquiry at the pleading stage. *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. Sept. 7, 2023) ("What Meta's true intent is, what steps it actually took to prevent the receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record."); *In re Meta Pixel Tax Filing Cases,* 724 F.Supp.3d 987, 1003 (N.D. Cal. Mar. 25, 2024) (same). Notwithstanding, "[t]o plead intent, a plaintiff must plead facts showing that the defendant 'acted consciously and deliberately with the goal of intercepting wire communications.'" *Walgreen Co.*, 733 F.Supp.3d at 902 (quoting *United States v. Christiansen*, 828 F.3d 763, 775 (9th Cir. 2015)). Plaintiff has done so here.

The FAC contains several allegations that Meta intentionally intercepted Plaintiff's PII and PHI from Plaintiff's communications with Defendant through the Facebook Tracking Pixel. FAC ¶¶ 27-30. At the pleading stage, that is sufficient to establish intent. *See Walgreen Co.*, 733 F.Supp.3d at 902.

[1] Plaintiff does not allege that Defendant violated the first clause of Section 631(a).

Despite these allegations, Defendant also argues that Plaintiff consented to the interceptions by agreeing to Meta's Terms of Service. MTD at 17. However, Meta explicitly represents to its users that it will only collect personal data where it has a lawful basis. FAC ¶ 49. Here, Meta did not have a lawful basis to intercept Plaintiff's protected health information. Accordingly, Defendant is liable for its conduct in aiding Meta in the alleged CIPA violation. *See Yoon v. Lululemon USA, Inc*. 549 F. Supp 3d. 1073, 1083 (C.D. Cal. 2021) ("a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (same); *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d at 1003 ("Indeed, Meta does not contend that its Terms of Service specifically disclosed that it would receive sensitive financial data. To the contrary, Meta asserts that it publicly stated that such information would *not* be collected.").

Tellingly, Defendant primarily relies upon outdated case law that does not concern the tracking technology at issue here. *See, e.g., Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *1 (C.D. Cal. Feb. 22, 2012) (case concerning recorded customer service phone calls); *People v. Superior Court of Los Angeles County*, 70 Cal.2d 123, 126 (1969) (motion to suppress evidence gained from recording system in a criminal trial). The sole relevant authority relied upon by Defendant has since been superseded after the plaintiffs amended their allegations. *Doe I v. Google LLC*, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025) (finding that "it's reasonable to infer from the allegations in the complaint and the materials that can be considered at this stage that Google intended to receive communications containing individually identifiable health information"). Finally, Defendant's attempt to invoke the party exception fails, as Plaintiff alleges that Meta used the intercepted communications for its own independent purposes. FAC ¶¶ 23-30; *Revitch*, 2019 WL 5485330, at *2 ("But it cannot be that anyone who receives a direct signal escapes liability by

becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication. Facebook acquired user communications by causing their browsers to transmit parallel signals, but that means of interception should not have stripped Facebook of its third-party status.").

### B. **Plaintiff Did Not Consent to the Disclosure of His Protected Health Information**

Defendant contends that Plaintiff's claims under CIPA fail because "fails to plausibly allege that he did not consent to Meta's receipt of his data from LasikMD." MTD at 18. However, "[o]n a motion to dismiss, the burden of proof to show consent rests with defendants." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077–78 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ("On this motion to dismiss, the issue of consent is front and center and the burden of proof to show this exemption applies is on Meta."); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("Google bears the burden of proof on consent."); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) (collecting cases).

Here, Plaintiff specifically alleges he did not consent to Defendant's interception of his confidential information conveyed to LasikMD. Complaint ¶¶ 7, 94, 112. Nevertheless, Defendant argues that Plaintiff consented based on Meta's Data Policy and Cookies Policy. MTD at 19. This argument is unavailing because it does not explicitly notify Plaintiff of the practice at issue: Defendant's disclosure of the confidential health information of Plaintiff and class members and using it to bolster its advertising services. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.*, 2013 WL 5423918, at *13

(N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."). This is in addition to the fact that Defendant falsely states that they "require each of [their] partners to have lawful rights to collect, use and share your data before providing any data to us it" and that it does not "use sensitive personal data for ad targeting." FAC. ¶ 49-51. Defendant's generalized disclosures do not create consent for interception of lawfully protected private health information, and Defendant lulled Plaintiff and class members into a false sense of security by representing that it would not intercept their protected health information, when in fact it was. In sum, Defendant has not carried its burden to establish consent. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (finding that plaintiffs did not consent to Facebook's interception of their PHI and PII despite plaintiffs agreeing to Meta's Terms of Service).

Defendant's reliance on *Smith v. Facebook, Inc.* is misplaced, as those claims only concerned mere browsing activity, which did not "reveal details of an individual's health status or medical history." 745 F. App'x 8, 9 (9th Cir. 2018). This is in stark contrast to the allegations presented here, where Plaintiff alleges that Defendant disclosed information related to his LASIK surgery consultation. FAC ¶ 6. The remaining authority relied upon by Defendant is inapposite, as those cases did not concern the disclosure of protected health information. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *4-5 (N.D. Cal. July 28, 2021) (allegations concerning

disclosure of financial information to payment processor); *Garcia v. Enterprise Holdings, Inc.*, 78 F.Supp.3d 1125, 1135-38 (N.D. Cal. 2015) (finding consent where the privacy policy expressly states the types of information shared with third parties). Notably, Defendant fails to cite any authority finding that Meta's terms of service are sufficient to establish consent for the interception of HIPAA protected information. There is none.

## IV. PLAINTIFF CAN SEEK INJUNCTIVE RELIEF FOR HIS INVASION OF PRIVACY CLAIM UNDER THE CALIFORNIA CONSTITUTION

Defendant argues that Plaintiff "lacks standing to bring a claim for injunctive relief." MTD at 22. That is wrong.

As conceded by Defendant, "California's constitutional provision protecting the right of privacy. . . supports a cause of action for an injunction." MTD at 21. A plaintiff has standing to bring a claim for injunctive relief so long as the Plaintiff demonstrates a credible threat of future injury. *See Matera v. Google Inc.*, 2016 WL 5339806, at *19 (N.D. Cal. Sep. 23, 2016) (denying defendant's motion to dismiss for lack of standing to seek injunctive because "[p]laintiff has alleged real and immediate threat of repeated injury from Google's alleged interception, scanning, and analysis practice.") (internal quotations omitted). Here, the tracking pixel is invisible, meaning that it can be installed on any webpage and continue to intercept sensitive health information. This is particularly concerning given the aforementioned lack of consent. *See id.* ("Because Google has not established a consent defense, Plaintiff has alleged "real and immediate threat of repeated injury" from Google's alleged interception, scanning, and analysis practices."). A continued threat of future injury is also present, given that Meta still retains Plaintiff's protected health information, which was unlawfully disclosed by Defendant. Accordingly, Plaintiff has standing to bring a claim for invasion of privacy under the California constitution. *See D'Angelo v. FCA US, LLC*, 726 F.Supp.3d 1179, 1194

(S.D. Cal. Mar. 28, 2024) (standing to seek injunctive relief where there is "ongoing use of th[e plaintiffs'] intercepted data"); *Cousin*, 702 F.Supp.3d at 974.

Defendant's reliance on *Jones* and *Bras* is misplaced, as those cases do not concern the unlawful disclosure of protected health information. *See Jones v. Peloton Interactive, Inc.*, 720 F.Supp.3d 940, 943 (S.D. Cal. Mar. 12, 2024) (allegations concerning the recording of general chat communications with website); *Bras v. Cal. Pub. Util.'s Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995) (racial discrimination case). Moreover, for the same reasons mentioned *supra*, Plaintiff did not consent to the interception and disclosure of his sensitive health information. Plaintiff has standing to bring a claim for invasion of privacy under the California constitution.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff respectfully seeks leave to amend.

Dated: August 1, 2025

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*